UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

MELVIN E. FLEMING, )
)
             Plaintiff, )
vs. ) No. 1:05-cv-0145-SEB-VSS
)
JIM NICHOLSON, Secretary, United States )
 Department of Veterans Affairs, )
)
             Defendant. )

**Entry Discussing Cross-Motions for Summary Judgment**

For the reasons explained in this Entry, the plaintiff's motion for summary judgment must be **denied** and the defendant's motion for summary judgment must be **granted.**

**I. Background**

Plaintiff Melvin Fleming ("Fleming") brought this employment discrimination action against the defendant, Jim Nicholson, Secretary of the United States Department of Veterans Affairs ("VA"), alleging that the VA violated a settlement agreement which had resolved Fleming's Equal Employment Opportunity ("EEO") complaint at the administrative stage. Fleming seeks resolution of his claim through the entry of summary judgment. The VA has opposed Fleming's motion for summary judgment and also seeks summary judgment as to Fleming's claim. Fleming did not respond to the VA's motion for summary judgment.

"Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the Federal Rules of Civil Procedure). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

> In evaluating whether a genuine issue of material fact exists, all evidence and inferences must be viewed in the light most favorable to the non-moving party. However, the non-moving party must set forth specific facts, more than mere conclusions and allegations, sufficient to raise a genuine issue for trial; the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.

*Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003) (internal citations and quotations omitted).

## II. Findings of Fact and Conclusions of Law

### A. Findings of Fact

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(e) for admissible evidence, the following facts are undisputed for purposes of the cross motions for summary judgment.

Fleming was initially hired in July 1997 at the Richard L. Roudebush VA Medical Center ("Medical Center") in Indianapolis, Indiana, as a temporary General Schedule ("GS") grade 4 Medical Clerk in Nursing Services, providing patient care. He was later promoted to a GS-5 Program Support Assistant, and in 1999, he was promoted to a GS-6 Program Support Assistant. On December 5, 1999, Fleming was reassigned to a GS-6 Patient Services Assistant in Ambulatory Care Service. A few years later, on April 6, 2003, Fleming was reassigned to a GS-6 Health Technician position in Ambulatory Care. In this position, he pulled charts, checked patients into and out of the clinics, performed administrative work, and was also responsible for patient care by taking vital signs and assisting patients in the examining rooms. The Program Support Assistants are in the occupational code "0303," and the Health Technicians are in the occupational code of "0640."

While working as a GS-6 Health Technician, Fleming submitted his application for a GS-7 Program Support Assistant in the Customer Services Center. Fleming was not selected for the position.

After finding out that he had not been selected for the position, Fleming contacted an EEO counselor on March 3, 2003. On April 22, 2003, he filed a formal complaint of discrimination concerning his non-selection. As part of the administrative process, on April 30, 2004, Fleming and the VA participated in mediation of his complaint. Aimee Alyea ("Alyea"), formerly Aimee Black, Labor Relations Specialist, attended the mediation on behalf of the Medical Center.

The VA did not admit liability. In the spirit of mediation and in an effort to resolve the dispute between the parties, however, Alyea, on behalf of the VA, offered to place Fleming in a GS-7 position within six months.

The mediator discussed the settlement terms with both Fleming and Alyea and then drafted a Settlement Agreement ("Agreement"), setting out the terms agreed upon, for the parties' review. Fleming and Alyea reviewed the terms set out in the Agreement and both signed the Agreement. The Agreement provided that in exchange for Fleming voluntarily withdrawing his EEO administrative complaint, the VA would:

> [d]uring the period not to exceed six (6) months from the date of execution of this Agreement, . . . offer Complainant at least one available GS-7 promotion position in the Veterans Administration Center, Indianapolis, for which he is otherwise qualified for. The Agency agrees to consult through the Agency Representative, Aimee Black [now Alyea], with Complainant regarding his preferences before offering such position; the Agency also agrees to operate in good faith in its attempt to match Complainant's preferences with an available GS-7 position. It is understood by and between the parties that if Complainant declines such offer, the Agency has no further obligation to promote or offer Complainant a noncompetitive position.

No specific position or service within the Medical Center was identified with regard to the offer of promotion. The Agreement also addressed what Fleming should do if he believed that the VA failed to comply with the terms of the Agreement:

> [T]he Complainant shall notify the Agency, in writing, of the alleged noncompliance within thirty days of when the Complainant knew or should have known of the alleged noncompliance. The Agency shall investigate the matter and respond to the Complainant in writing. If the Agency has not responded to the Complainant, in writing, or if the Complainant is not satisfied with the Agency's attempt to resolve the matter, the Complainant may appeal to the Equal Employment Opportunity Commission for a determination as to whether the Agency has complied with the terms of the settlement agreement. The Complainant may request that the terms of the settlement agreement be specifically implemented, or alternatively, that the complaint be reinstated for further processing from the point processing ceased. . . .

The parties further agreed that the Agreement "contain[ed] all the terms and conditions agreed to by the parties in settlement of this matter." Based upon the Agreement, Fleming's EEOC claim was dismissed.

On May 18, 2004, Fleming met with Alyea. He provided her with a document entitled "Notice of Complainant's Qualifications" ("Notice"). Attached to the Notice were several certificates indicating his completion of various training programs. Fleming also listed as some areas in which he would like to work the Chaplain Service, Customer Service, Human Resource Service and the Homeless Team. Fleming had no experience in any of these particular services. Fleming also expressed a desire to be given "any GS-7 position" for which he was qualified.

Alyea told Fleming that she would review the information that he had provided, review any possible positions within the Medical Center, determine what position could be offered, and then meet with him to discuss an offer of employment. Fleming agreed to the process. Following this discussion, Alyea initiated a review of the vacant positions within the Medical Center which were classified at a GS-7 grade. Unfortunately, no such positions were available.

After realizing there were no current vacancies in which to place Fleming, Alyea reviewed other possibilities with the Staffing Specialists. It soon came to light that there was a great need to identify and train someone to replace the current Urology Health Technician because the current technician was expected to retire within the next few years. Alyea knew that Fleming was already a GS-6 Health Technician and had the basic skills needed for the position. Further, Fleming was qualified for a GS-7 Urology Health Technician position. Because of Fleming's previous experience as a GS-6 Health Technician, she believed that he would have a smooth transition to a GS-7 position. Alyea determined that the Urology Health Technician position not only met the requirements of the Agreement, but also fit the needs of the Medical Center.

On Thursday, October 28, 2004, Alyea met with Fleming, and offered him the position of Health Technician in the Surgery Service, Urology Section. She gave Fleming a copy of the job description that described in detail the duties and responsibilities of the position. In addition, Alyea explained to him what the position entailed. She informed him that if he accepted the position, his supervisor would be Ms. Leona Dunlap-Sykes and that he would be promoted from GS-6, Step 6, to a GS-7, Step 4, and his salary would increase from $33,795 to $36,447 per year.

She also explained to Fleming that the Medical Center would provide any additional training necessary for him to perform the full functions of his position. It is common practice for Health Technicians, whether their duties are administrative and/or clinical in nature, to require additional training upon promotion or transfer because of the specific nature of the various areas within the Medical Center. Alyea knew that additional training would likely be necessary because Fleming would be transferring to a different section.

After asking some questions, Fleming acknowledged that he understood what Alyea had told him. Fleming did not tell Alyea or indicate to her that he was dissatisfied with the offer.

Alyea instructed Fleming to take the information and to contact her with his decision. Fleming said that he would review the documentation over the weekend and that he intended to have other persons review it as well. He said he would get back to her by November 1, 2004.

A few days later, Fleming brought Alyea a memorandum accepting the position, which he had signed. Alyea told Fleming that he could start the new position on November 14, 2004. Fleming did not give any indication that he was dissatisfied with the position or that he did not believe it complied with the terms of the Agreement.

On November 15, 2004, Fleming reported for work in the Urology Section of the Surgery Service. In his position, Fleming works with a nurse and another health technician, and they have provided him with in-house training.

Fleming also researched and located a two-year Surgical Technician program at Ivy Tech State College, which he believed would benefit him in his new position. He requested tuition assistance from the Medical Center to attend the program, indicating that the training would benefit the Medical Center because he would learn how to sterilize surgical instruments.

Fleming's supervisor, Ms. Dunlap-Sykes discussed Fleming's request with Alyea. Alyea recommended that the Medical Center provide tuition assistance to Fleming, and Thomas Mattice, Associate Medical Center Director, approved the requests. The training was authorized in connection with Fleming's employment as a Urology Health Technician.

Fleming has attended the Surgical Technician program since August 22, 2005. He attends during work hours, on authorized leave. Fleming has been reimbursed for tuition, book fees, and mileage.

With respect to his position as a GS-7 Health Technician, Fleming has been able to perform all of the duties he has been requested to do. No one has ever suggested to Fleming that he is not qualified to perform the duties of the position. Since his acceptance of the Health Technician position, Fleming has not applied for any other GS-7 positions.

The Agreement required Fleming to notify the VA in writing of any noncompliance within 30 days of when Fleming knew or should have known of the noncompliance. On November 17, 2004, Fleming sent a "Failure to Comply with Settlement Agreement" to the Administrative Law Judge at the EEOC Indianapolis District Office, with copies to Alyea and to the VA's Regional Counsel's office.

Less than two months after sending his "Failure to Comply with Settlement Agreement" to the EEOC Indianapolis District Office, and without waiting to hear from the VA or the local EEOC, on January 11, 2005, Fleming filed a "Notice of Intent to Sue" with the EEOC Indianapolis District Office. On February 14, 2005, the VA Regional Counsel notified Fleming by letter that after consideration of his claims of noncompliance, it did not appear that any breach had occurred.  Fleming was invited to contact Alyea to schedule a time to further discuss his concerns, but he never did.

On March 20, 2005, the EEOC Washington Field Office received a "Continuation of Failure to Comply with Settlement," from Fleming. In this "Continuation," Fleming notified the VA of "the alleged noncompliance" pursuant to 29 C.F.R. § 1614.504(a). Fleming did not notify the administrative EEOC offices that he had already filed his federal lawsuit on January 28, 2005.

On May 13, 2005, the Office of Resolution Management issued its Final Agency Decision regarding Fleming's allegation of breach of the Agreement. That office noted that Fleming had notified the EEOC Indianapolis District Office rather than the Agency of his allegations of breach of the Agreement. It also noted that Fleming had filed a civil action on January 28, 2005, in the United States District Court, Southern District of Indiana. Citing

29 C.F.R. Section 1614.107(a)(3), which allows for dismissal of a complaint that is pending in a United States District Court in which the complainant is a party, the Office informed Fleming that it would not adjudicate his claim.

Fleming appealed the May 13, 2005, Final Agency Decision on June 10, 2005. This appeal was dismissed by the Office of Field Operations on September 19, 2005, because of his civil action in federal court.

### B. Conclusions of Law[1]

A settlement agreement is interpreted as a contract. *United States v. Rand Motors*, 305 F.3d 770, 774 (7th Cir. 2002). Federal common law rules of contract interpretation are applied to construe a federal government contract. *Funeral Financial Systems v. United States*, 234 F.3d 1015, 1018 (7th Cir. 2000). Under federal common law, contracts are interpreted "in an ordinary and popular sense as would a person of average intelligence." *Rand*, 305 F.3d at 774 (internal quotation omitted). Such a contract is construed in an attempt to give full effect to the intent of the parties. *Id.* An objective standard of reasonableness determines the meaning of the agreement. *Id.*

The Agreement states that the VA would offer Fleming "at least one available GS-7 promotion position in the Veterans Administration Center, Indianapolis, for which he is otherwise qualified for." The VA further agreed to have Alyea consult with Fleming "regarding his preferences before offering such position" and to "operate in good faith in its attempt to match [Fleming's] preferences with an available GS-7 position."

It is undisputed that Alyea and Fleming met on May 18, 2004, and Fleming provided his "Notice of Complainant's Qualifications." The May 18 meeting satisfied the Agreement's provision that the parties would consult regarding Fleming's preferences. Fleming's Notice stated that he was qualified to work as a Program Support Assistant in the Chaplain Service, Customer Service and in Human Resources. The Notice further stated that Fleming would be qualified for any GS-7 position dealing with Homeless Veteran Initiative, Addiction Dependency or general counseling of veterans. Fleming also listed "any GS-7 position for which I am qualified." It is undisputed that Fleming had no work experience in the Chaplain Service, Customer Service, Human Resource Service or the Homeless Team. There is no evidence that there were any GS-7 job vacancies in those sections at the time Alyea reviewed possible employment options for Fleming. There is also no evidence that Alyea acted in bad faith in offering Fleming the Health Technician position.

---

[1] Although in his complaint Fleming describes his claim as one of "discrimination," and alleges that he was subjected to a "hostile environment" because he was placed "in an area he was unfamiliar with," there is no allegation or evidence of any discrimination on the basis of Fleming belonging to a class protected by Title VII of the Civil Rights Act, such as race, color, religion, sex, or national origin. Accordingly, the court treats this case solely as one of contract interpretation under federal law.

Fleming's list of preferred positions included his willingness to accept any GS-7 positions for which he was qualified. The Health Technician position he was given was a GS-7 position. Fleming contends that he was not qualified for that position. He presents no evidence, however, to support this argument. Rather, the undisputed record reflects that he was, in fact, qualified for the Health Technician position. Fleming's burden to set forth specific facts to show that a genuine issue exists cannot be met with conclusory statements or speculation, but only with appropriate citations to relevant admissible evidence. *See* Local Rule 56.1.  A plaintiff's own unsubstantiated assertions are insufficient to defeat a motion for summary judgment. *See Weeks v. Samsung Heavy Indus. Co.,* 126 F.3d 926, 939 (7th Cir. 1997).

Fleming further argues that the VA violated the Agreement when it offered him a "surgical position," in the classification code 0640 series of jobs, rather than an "administrative position," in the 0300 series of jobs. He asserts that his experience or preference was to work in a classification code 0300 job. The Agreement, however, did not specify any particular series of job classifications. Rather, an offer of any GS-7 position for which he was qualified satisfied the clear terms of the Agreement.

Fleming accepted the position of Health Technician having been advised of the duties and responsibilities it would require. During the discussions related to that position, Fleming gave no indication that he was dissatisfied in any way with the offer. There was no bad faith exhibited in offering him the Health Technician job. In sum, Fleming has failed to present any evidence which creates a genuine issue of fact that the VA violated the Agreement. Under these circumstances, the defendant is entitled to summary judgment.

### III.  Conclusion

Judgment as a matter of law is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). That is the case here. Accordingly, the plaintiff's motion for summary judgment must be **denied** and the defendant's motion for summary judgment must be **granted**.  Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  08/29/2006

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana